Bernard MITCHELL, Plaintiff,

v.

UNION PACIFIC RAILROAD CO., a corporation, Chicago Northwestern Railroad Co., a corporation, et al., Defendants.

Civ. No. 15634.

United States District Court
S. D. California,
Central Division.

Nov. 25, 1960.

Monroe & Chula; by George H. Chula, Santa Ana, Cal., for plaintiff.

Edward C. Renwick, Malcolm Davis; by Malcolm Davis, Los Angeles, Cal., for defendants.

KUNZEL, District Judge.

In 1952, plaintiff, a resident and citizen of Ireland, lost, probably through suffocation, a trained dog named "Pudsy" while it was being carried as baggage by defendant Chicago, Northwestern Railroad Co. Some of the facts and the issues are well summarized in the opinion of Mitchell v. Union Pacific Railroad Co., 9 Cir., 1957, 242 F.2d 598, wherein the court vacated the summary judgment granted by the district court.

After remand, this case was tried with a jury which returned a verdict for plaintiff against defendant Chicago Northwestern Railroad Co., hereinafter referred to as the defendant, upon the cause of action for negligence and awarded damages in the amount of $12,000. Interrogatories propounded and answers of the jury thereto are set forth in the margin[1] for the purpose

1. "Interrogatory No. 1:

Did the defendants or either of them, induce the plaintiff to enter into the contract for the carriage of his dog on the train in question by fraud?

Answer "Yes" or "No": __No__

Interrogatory No. 2:

If your answer to Interrogatory No. 1 is "Yes", state which of the defendants were guilty of fraud.

Interrogatory No. 3:

Were the defendants, or either of them guilty of negligence in the transportation of the dog?

Answer "Yes" or "No": __Yes__

Interrogatory No. 4:

If your answer to Interrogatory No. 3 is "Yes", state which of the defendants were negligent.

Chicago Northwestern Railroad Co.

Interrogatory No. 5:

Was the plaintiff guilty of any negligence in connection with the trans-

portation of the dog which proximately contributed to the death of the dog?

Answer "Yes" or "No": __No__

Interrogatory No. 6:

Were the defendants, or either of them, guilty of wilful or oppressive misconduct which proximately caused the death of the dog?

Answer "Yes" or "No": __No__

Interrogatory No. 7:

If your answer to Interrogatory No. 6 is "Yes", state which of the defendants were guilty of such wilful or oppressive misconduct.

Interrogatory No. 8:

Did Mrs. Mitchell sign the valuation slip as the agent of plaintiff?

Answer "Yes" or "No": __No__

Interrogatory No. 9:

Under the circumstances shown by the evidence, was the plaintiff placed upon notice that the carriage of the dog was governed by tariff regulations, with respect to the amount of money recoverable in the event the dog should be lost or damaged?

Answer "Yes" or "No": __No__"

of comparing them with the special verdict rendered by the jury in the second trial.

Upon entry of judgment, the court on its own motion ordered a new trial "unless plaintiff * * * filed written consent to reduction of judgment to the sum of $2,000 and costs." Consent was not filed.

Upon the setting of the case for new trial, plaintiff filed with the Court of Appeals for the Ninth Circuit, a petition for an extraordinary writ to prohibit the district court from proceeding with a new trial on the ground that the time had expired for the district court to act on the motion for new trial. Leave to file the petition was denied. Mitchell v. District Court, 9 Cir., 1959, 270 F.2d 70.

The case was retried with a jury, and upon submission the court directed a verdict in favor of the Union Pacific Railroad Co. and instructed the jury to return a special verdict, a copy of which as returned by the jury is set forth in the margin.[2] Judgment has not yet been entered on the special verdict. There has been filed by defendant and submitted, a "motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial." The verdict was directed in favor of defendant Union Pacific R. R. Co. because neither it nor any of its agents committed any of the acts complained of. The Union Pacific R. R. Co. did not take over the train until it reached Omaha, Nebraska.

The task which now confronts the court is to attempt to construe the special verdict in such a way that in event of error in this respect the Court of Appeals on remand can direct the correction of the judgment, thus avoiding retrial if at all possible. This litigation must come to an end.

During the trial there was considerable controversy whether state or federal law was applicable. In view of the intended interstate shipment of "Pudsy" by rail, it is the court's opinion

2. "1. Did the defendant Chicago & Northwestern Railway Company induce the plaintiff to enter into the contract for the carriage of his dog on the train in question by fraud? <u>Yes</u>

"2. Was the defendant Chicago & Northwestern Railway Company guilty of negligence in the transportation of the dog? <u>Yes</u>

"3. Was the plaintiff guilty of negligence in connection with the transportation of the dog which proximately contributed to the death of the dog? <u>Yes</u>

"4. Was the defendant Chicago & Northwestern Railway Company guilty of wilful or wanton misconduct which proximately caused the death of the dog? <u>Yes</u>

"5. Did Mrs. Mitchell sign the valuation slip as the agent of plaintiff? <u>Yes</u>

"6. Under the circumstances shown by the evidence, was reasonable notice given by defendant Chicago & Northwestern Railway Company that the carriage of the dog was governed by tariff regulations with respect to the amount of money recoverable in the event the dog should be lost or damaged? <u>Yes</u>

"7. Was the plaintiff given a fair opportunity to choose between a higher or lower liability on the part of the Chicago & Northwestern Railway Company before turning the dog over to the defendant for shipment? <u>Yes</u>

"8. What sum would reasonably compensate the plaintiff for the loss of his dog? $ 5,000.00

"9. Is the plaintiff entitled to exemplary damages? <u>Yes</u>
(Yes or No)

"If so, in what amount? $ 3,500.00"

that federal law applies to all phases of the case. Boston & Maine R. R. v. Hooker, 1914, 233 U.S. 97, 109, 34 S.Ct. 526, 58 L.Ed. 868; New York, N. H. & H. R. Co. v. Nothnagle, 1953, 346 U.S. 128, 130, 73 S.Ct. 986, 97 L.Ed. 1500.

■ The facts regarding the checking of the dog and plaintiff's inability to get into the baggage car to see his dog between Chicago and Clinton, Iowa, as related in Mitchell v. Union Pacific Railroad Co., supra, are substantially the same as testified to by plaintiff and his wife at this trial. However, the baggage check clerk testified that he carefully explained to plaintiff and his wife that the $25 valuation was the basic allowance and that they could secure a valuation up to $300 by paying an additional $1 per $100 valuation. The clerk further testified that he knew that there would be no attendant in the baggage car between Chicago and Clinton; that he knew that the car was sealed; and that he thought that the conductor had a key to the car but would have to break a metal seal to get into the car.

Defendant's conductor testified he did not recall anyone asking him about getting into the baggage car until plaintiff and his wife inquired when they were about 18 miles from Clinton, at which time he told them that he could not go into the car until the train reached Clinton. The trip from Chicago to Clinton took about three hours, from 5:30 p. m. to 8:30 p. m., on June 24, 1952. It was agreed that it was a very warm day.

The passenger trainman who got on at Clinton testified that plaintiff asked to see his dog while they were standing on the platform and that he took plaintiff into the baggage car when the train was about six minutes out of Clinton. At that time they found the dog dead. The trainman further testified that the dog's body appeared to be bloated and that it took up almost the entire carrying case. This was denied by plaintiff.

Plaintiff testified that when they entered the baggage car "it was just like walking into a furnace," and that the dog crate was in a clear area about four feet by three feet, with baggage piled up around it on all sides. Plaintiff stated that he wanted to bring the dog's body to Los Angeles, but that he was ordered to put it off the train at the next stop after Clinton. It was agreed that the dog was buried by defendant's track crew and that no autopsy was performed. Thus, the jury, by drawing inferences from all the facts and circumstances, was warranted in finding that cause of death was suffocation due to defendant's negligence.

■ Plaintiff alleges three causes of action based on fraud, negligence, and wilful or wanton misconduct.

On the first cause of action defendant contends that the facts do not support a finding of fraud because there is no evidence of fraudulent intention to cheat or be dishonest, or to induce plaintiff to place his dog aboard the train which, according to defendant, "was a matter of complete indifference" to the baggage clerk.

The first of defendant's contentions in this respect is answered by the following quotation from Prosser, Torts 537–8 (2 ed. 1955):

"The intent which underlies an intentional misrepresentation * * involves the intent that a misrepresentation shall be made, that it shall be directed to a particular person * * *, that it shall convey a certain meaning, that it shall be believed, and that it shall be acted upon in a certain way * * *. [T]he fact that the defendant was disinterested, that he had the best of motives, and that he thought he was doing the plaintiff a kindness, will not absolve him from liability; so long as he did in fact intend to mislead."

■ As to defendant's second contention that there is no evidence of intent to induce, intent may be established by circumstantial evidence and inferences deducted from all the facts and circumstances. See Connolly v. Gishwiller, 7 Cir., 1947, 162 F.2d 428, 433; Cumber-

land Portland Cement Co. v. Reconstruction Finance Corp., D.C.E.D.Tenn.1953, 140 F.Supp. 739, 750, affirmed sub nom. Ralph Rogers & Co. v. Reconstruction Finance Corp., 6 Cir., 1956, 232 F.2d 930. Here the circumstances are such that the jury's finding is supported by the evidence.

■ The jury found that plaintiff was guilty of contributory negligence. Defendant alleged in this regard that "* * * plaintiff acted carelessly and negligently in presenting his dog for checking as baggage by furnishing an unfit crate for the carriage of the dog, by failing to provide a supply of water for the dog, by feeding the dog improperly, and by presenting the dog for checking in the baggage car at all under the circumstances existing * * *"

The only allegation of contributory negligence supported by any substantial evidence is that plaintiff furnished a crate which was too small and did not afford adequate ventilation. Even if it be admitted that plaintiff's furnishing a crate which was too small and which did not afford adequate ventilation was a contributing cause of the dog's death, the better reasoned cases hold that contributory negligence is no defense to an action for intentional misrepresentation. See Prosser, Torts 552 (2 ed. 1955).

■■ Defendant contends that, even though the evidence supports a finding of fraud, the federal rule is a principal will not be held personally liable for his agent's fraud unless it was participated in by the principal or the principal knowingly permitted the agent to commit it. In support of this contention, defendant cites Janeczko v. Manheimer, 7 Cir., 1935, 77 F.2d 205, 207. This case, in the court's opinion, does not support defendant's position because therein the court's decision is based upon the fact that the agent was a special agent with limited authority. The federal law follows the universally accepted rule that a principal is liable for the fraud of an agent committed when the agent is executing a transaction within the scope of his employment.

Amen v. Black, 10 Cir., 1956, 234 F.2d 12, 20; United States v. United States Cartridge Co., 8 Cir., 1952, 198 F.2d 456, 464, certiorari denied 1953, 345 U.S. 910, 73 S.Ct. 645, 97 L.Ed. 1345; Ralston Purina Co. v. Novak, 8 Cir., 1940, 111 F.2d 631, 636. Here there is no question that the baggage clerk was executing a transaction within the scope of his employment when he checked the dog as baggage.

■ The most difficult question in the case is whether or not the fraud vitiates the value declaration and tariff provisions which would limit recovery to $25. The jury found, in answers to questions 6 and 7, (see note 2, supra) that plaintiff had notice of the tariff provisions and also was given a "fair opportunity to choose between the higher and a lower liability." Plaintiff contends, without citing any authority, that by reason of the finding of fraud, that in good conscience and equity, defendant should be estopped from asserting the limitation of liability. Defendant contends in substance that to allow the value declaration and the tariff provision to be vitiated, would open the door to the break-down of the system designed to prevent rebates. Defendant states "while plaintiff's counsel may be ingenious [in alleging and proving fraud], however, the court should not allow him to thwart the manifest intent of Congress in making the tariff provisions binding upon shipper and carrier alike." In support of the foregoing, defendant cites Van Dyke v. Pennsylvania R. Co., 1952, 7 Terry 529, 46 Del. 529, 86 A.2d 346, 352. In this case the plaintiff's trunk was lost and he sued the railroad for conversion, seeking damages for the full value of the trunk and its contents although the bill of lading limited liability. The court, in granting a summary judgment for the defendant, stated at page 352 of 86 A.2d:

"The law of the United States cannot be evaded in such a fashion as here attempted. The effect of a valid stipulation restricting liability

to the declared valuation cannot be escaped by the mere form of action."

Defendant relies upon the following language contained in Kansas City Southern Ry. Co. v. Carl, 1913, 227 U.S. 639, 653, 33 S.Ct. 391, 395, 57 L.Ed. 683:

"Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper."

Defendant also relies heavily on Cray v. Pennsylvania Greyhound Lines, 1955, 177 Pa.Super. 275, 110 A.2d 892, 894. In that case the plaintiff advised the railroad that the baggage was very valuable and inquired whether it was necessary to insure it. The plaintiff was advised that it was not necessary to insure the baggage. Plaintiff contended that the railroad was negligent in giving this misleading advice and information. The court stated that the question to be determined was " * * * whether the statement of the appellee's agent deprived appellant of a fair choice of alternative rates based on value and thus rendered ineffective the limitation of liability for loss of baggage contained in the tariff regulations of the Interstate Commerce Commission covering the operations of the appellee." The court held that the shipper was bound by the tariff provisions limiting the railroad's liability. However, in none of the cases cited and relied upon by defendant, was fraud an issue.

This seems to be a case of first impression. Logic impells the result that the value declaration and the tariff provisions are of no force and effect when a contract of carriage is secured by deceit such as found by the jury to exist here. There are several decided cases, although not in point, which indicate that a value limitation obtained by deceit on the part of the carrier would be ineffective. See Pacific Exp. Co. v. Foley, 1891, 46 Kan. 457, 26 P. 665, 667, 12 L.R.A. 799; St. Louis & S. F. R. Co. v. Zickafoose, 1913, 39 Okl. 302, 135 P. 406, 410.

The real question here is whether or not the legislative policy of maintaining uniform rates and of preventing rebates is so strong that it would allow the carrier to limit its liability even though it was the fraud of one of its agents which induced the contract of carriage. It is not believed that such a result is required, and the court holds that the fraud vitiated the value declaration and the tariff provisions which would limit the liability.

 The first cause of action also alleges that the acts of defendant were wilful and wanton and contains a demand for exemplary or punitive damages. The jury found that defendant's acts were wilful and wanton. Most states allow exemplary damages where the acts of the agent are wilful and wanton even though not participated in by the principal. However, the federal law follows the rule that an award of exemplary or punitive damages can only be made against a principal where the principal participates in the act or approves of it. Lake Shore & Michigan Southern Railway Co. v. Prentice, 1893, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97; Huddy v. Railway Express Agency, 1936, 181 S.C. 508, 188 S.E. 247, 250, 107 A.L.R. 1437. It is, therefore, held that there can be no award of exemplary damages as to any of the causes of action.

The second cause of action alleges that the proximate cause of the death was negligence on the part of the railroad in failing to "give proper attention to said animal, by giving it the necessary food, water, light and ventilation, and furnishing an attendant." The jury found negligence, but as already noted, also found that defendant was guilty of contributory negligence which proximately caused the death of the dog. Plaintiff contends that the contributory negligence of the inadequacy of the carrying case is not a defense because the carrier accepted the case. There would seem to be no question that where a carrier accepts a package for carriage, it cannot defend on the ground that the package was inadequate. 9 Am.Jur.,

Carriers § 731 (1937). Here, however, it is the court's opinion that the jury was justified in finding contributory negligence upon the ground that the plaintiff should have known whether or not his dog would tolerate the small carrying case.

The third cause of action alleges that the acts of defendant in failing to furnish supervision for the dog and to allow plaintiff to have access to his dog, were wilful and wanton misconduct which proximately caused the death of the dog.

■ Contributory negligence is not available as a defense against wilful misconduct, Prosser, Torts, 290 (2 ed. 1955).

■ Defendant here again urges that the value declaration limits the amount of plaintiff's recovery to $25. Defendant cites as analogous, several cases which hold such a value declaration effective even though goods shipped are embezzled by an employee of the carrier, e. g., Glickfeld v. Howard Van Lines, 9 Cir., 1954, 213 F.2d 723, 728. There is, however, a line of cases holding that where the goods shipped are converted by the carrier to its own use, the carrier cannot rely upon the value declaration, e. g., St. Louis, I. M. & S. Ry. Co. v. Wallace, Tex.Civ.App.1915, 176 S.W. 764, 766. There are two isolated state cases which uphold the value declaration even though the carrier's employees were guilty of wilful misconduct or gross negligence which caused the loss of the goods shipped. Bassett v. Chicago & N. W. Ry. Co., 1918, 168 Wis. 617, 171 N.W. 749, 751, 752; Henderson v. Wells Fargo & Co. Express, Tex.Civ.App.1919, 217 S.W. 962, 966. Thus, here again, we find no cases directly in point and are again confronted with the problem of determining whether legislative policy against rebates and in favor of uniform rates is so strong as to allow the carrier to limit its liability when a loss occurs by reason of such conduct on the part of its employees as the jury here found.

While the court has held that the fraud here, which induced plaintiff to place his dog aboard the train, vitiated the value declaration, the court is not prepared to hold that wilful misconduct will override or vitiate the value declaration for the reason that there is so little distinction between the nature of evidence necessary to prove ordinary negligence on the one hand and wilful misconduct on the other. If a shipper were allowed to avoid a value declaration because of the wilful misconduct of carrier's employees, such would be the issue in too large a number of cases where goods were lost.

■ This leaves the question of whether or not the compensatory damages to be entered on the first cause of action and found by the jury to be in the amount of $5,000 are supported by the evidence and whether the amount is excessive. The testimony as to the value of the dog is sharply conflicting. Plaintiff claimed that "Pudsy" could give answers of problems in addition, subtraction and division in any combination up to 20 by a number of barks. Plaintiff testified that the only prompting given to the dog was his tone of voice. Plaintiff further claimed that the dog would bark the number of spots appearing on a playing card without signal except being shown the card. The dog was six years old and had never been exhibited professionally but it had been shown at a number of charitable shows in Ireland. Plaintiff said that the dog was known as the "wonder dog of Ireland." Plaintiff's experts said that the feats claimed for the dog by plaintiff could be accomplished. This, defendant's experts said, was impossible. Defendant's experts stated that even if it were possible to accomplish the feats claimed, there would be no demand for such a dog and the earnings would be limited. Plaintiff's experts testified that the dog would be in great demand. The court offered to call as its expert a professor of animal psychology, but upon objection by counsel for both parties, the offer was withdrawn. The experts for defendant testified that the value of the dog was not in excess of $750, while plaintiff himself testified that the value of the dog was in

876

excess of $100,000 and his experts testified that the dog could earn in excess of $100,000.

It is not felt that the $5,000 found by the jury to be the compensatory damages, is so excessive that it shocks the conscience.

Judgment shall be entered in accordance with the foregoing opinion. Defendant's motion for judgment notwithstanding the verdict or for new trial, is denied.