Patrick **PAINE-HENDERSON,** Plaintiff,

v.

**EASTERN GREYHOUND LINES, INC.
and Grey Advertising, Inc.,
Defendants.**

Civ. A. No. 69-686.

United States District Court,
D. South Carolina,
Charleston Division.

Heard Aug. 19, 1970.

Decided Sept. 3, 1970.

Ellis I. Kahn, of Solomon, Solomon & Kahn, and Thomas D. Wise, of Way, Burkett & Wise, Charleston, S. C., for plaintiff.

J. W. Cabaniss, of Grimball & Cabaniss, Charleston, S. C., for defendants.

HEMPHILL, District Judge.

This matter is before the court on the motion of each of the defendants for summary judgment in accordance with the provisions of Rule 56(b) of the Federal Rules of Civil Procedure. The relevant facts for purposes of this motion are not in substantial dispute. As alleged and supported by the plaintiff's deposition they are as follows.

The plaintiff, an author and playwright, planned a trip from Washington, D. C., to Charleston, South Carolina. In choosing his mode of transportation he was induced to make the journey by bus, specifically Greyhound Lines, by certain advertisements published by the defendant, Grey Advertising, Inc. The theme of the advertisements was that the defendant Greyhound Lines offered through bus service to many destinations including Charleston. On March 7, 1968, the plaintiff, having purchased a round trip ticket, journeyed to Charleston on a through bus belonging to the defendant Greyhound Lines.

While in Charleston the plaintiff read further advertisements prepared by the

defendant Grey Advertising similar to those circulated in the Washington area. The advertisement made a part of the record by the plaintiff contained the following language, upon which the plaintiff relies:

GREYHOUND DOES!

On a Greyhound thru-service bus, you sit relaxed as pudding while you get where you're going, fast! No fuss, no bother. No change of seat, bus, or baggage. No connections to make. You glide downtown to downtown, over the smoothest highways in the world, with nothing more strenuous to do than smile. Nobody has more thru buses than Greyhound. We hope you'll smile on us.

And plaintiff was thereby allegedly induced to return to Washington by Greyhound's through bus service.

On March 14, 1968 the plaintiff appeared at the defendant Greyhound Lines' terminal in Charleston, South Carolina, and requested transportation to Washington via through bus, explaining that he had to have the luggage on the bus with him. He was allegedly informed by the ticket agent that the 3:45 P.M. bus was in fact a through bus and after taking certain precautions to insure that his baggage, which he had earlier checked, was loaded on that same bus, boarded and proceeded toward Washington.

In Richmond, Virginia, the plaintiff was awakened, found the bus deserted, and was told that the bus on which he was traveling would not stop in Washington but rather go on to New York. He was told further that his luggage had already been transferred to a bus which had departed for Washington. When the plaintiff arrived in Washington by a later bus, his baggage could not be found and it has not subsequently been found.

It is alleged, and for purposes of this motion concluded, that the plaintiff's suitcase contained articles of considerable value including the only copy of a manuscript of a completed novel and of a screen play written by the plaintiff.

Further, as a result of the plaintiff's distress at losing the manuscripts, he has developed certain physical disorders.

The plaintiff's action against both defendants is based upon a theory of fraud and deceit. The defendant Greyhound Lines' motion for summary judgment is upon the grounds that its liability for the loss of the luggage is effectively limited to $50.00 by its tariff duly filed with the Interstate Commerce Commission in accordance with the Carmack Amendment, 49 U.S.C. Section 20(11), which was made applicable to motor carriers by 49 U.S.C. Section 319. The tariff provided that recovery for loss of baggage was limited to $50.00 unless the passenger declared and paid for excess valuation over $50.00 at a rate of 25 cents for each $50.00 of excess valuation, but the total valuation was limited to $250.00. The tariff further stated that valuable papers including manuscripts were carried at the owner's risk. Notices of the limitations of liability were posted in the defendant's terminal in Charleston and the limits were written on the claim check the plaintiff received when he checked his luggage. According to the plaintiff's statement he did not read the claim check and was not aware of the limitations.

Although the basis of the court's jurisdiction is diversity of citizenship, the transaction involved was in interstate commerce and federal law applies to all phases of the case. (Boston and Maine Railroad v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868 (1914); Mitchell v. Union Pacific Railroad Co., 188 F.Supp. 869 (S.D.Cal.1960)). The real question presented is whether the legislative policy of maintaining uniform rates in interstate commerce and of protecting carriers from exorbitant claims for loss of articles shipped is so strong that it would limit liability even though it was the fraud of the carrier's agent which induced the contract of carriage. (See Mitchell v. Union Pacific Railroad Co., 188 F.Supp. 869, 874 (S.D.Cal.1960)). That the legislative policy announced in the Carmack Amendment is a strong one

cannot be questioned. (See Kansas City Southern Railway Co. v. Carl, 227 U.S. 639, 33 S.Ct. 391, 57 L.Ed. 683 (1913). In Van Dyke v. Pennsylvania Railway Co., 7 Terry 529, 86 A.2d 346 (Del.1952) the shipper sought to avoid the tariff limitation by suing the carrier for conversion rather than upon the contract of carriage. In granting summary judgment to the carrier, the court stated that the policy of the act could not be avoided merely by changing the cause of action. The decision in Chandler v. Aero May-Flower Transit Co., 374 F.2d 129 (4th Cir. 1967) is not dispositive of this question. The fraud and mistake there shown were in connection with the execution of a valuation required by the act to be agreed upon in writing. The fraud which the plaintiff attempts to show in this action is in the inducement to enter the contract as opposed to the fraud in the *factum* in the *Chandler* case where the plaintiff allegedly believed he was signing an inventory when in fact he was signing the value limitation relied upon by the defendant. The court, however, is not persuaded by this difference. One who employs fraud in the inducement is as reprehensible as one who employs fraud in the *factum*. As there are no third parties here involved and fraud *in factum* avoids limits of liability otherwise enforceable (Chandler v. Aero Mayflower, supra), it follows that fraud in the inducement if proven has like effect. The only case considering this point found by the court provides strong support for this conclusion. (Mitchell v. Union Pacific Railroad Co., 188 F.Supp. 869 (1960)).

 The record, in its present posture, offers scant support for the plaintiff's allegations of fraud. For these purposes it must be considered true that the agent of the defendant Greyhound Lines within the scope of his authority informed the plaintiff that the bus he boarded for Washington was a through bus; that it was not a through bus; and that the plaintiff would not have taken it had he known it was not a through bus. Common experience warrants the inference that had the bus been a through bus the baggage would not have been lost. The record contains no evidence of the agent's knowledge of the falsity of his statement or of his purpose in making it. There is substantial authority that where the mental state of the person who did the act complained of is at issue the matter may not be disposed of on summary judgment. (Alabama Great Southern R. Co. v. Louisville and Nashville R. Co., 224 F.2d 1 (5th Cir. 1955)); Subin v. Goldsmith, 224 F.2d 753 (2nd Cir. 1955); Alvado v. General Motors Corp., 229 F.2d 408 (2nd Cir. 1956)). In light of the broad statement of language of Rule 56, these cases cannot be unqualifiedly accepted.[1] However, summary procedures should be used sparingly where knowledge, motive and intent of the defendant play leading roles in the proof. (Bradford v. School District No. 20, Charleston, S. C., 364 F.2d 185 (4th Cir. 1966)). Fraud or any element thereof may be proven by circumstantial evidence. (Thomas v. Doyle, 88 U.S.App.D.C. 95, 187 F.2d 207 (1950)). For these purposes the false statement of the agent about the bus, where correct information was readily available to him, justifies the inference that the statement was made in disregard of its truth or with knowledge of its falsity.

The cause of action against the defendant Grey Advertising, Inc., rests solely upon the content of advertising designed to induce the public to patronize the through buses of the defendant Greyhound Lines. The court recognizes that the rapid development and expansion products liability law for the protection of the consumer can be expected to impose liability upon advertising agencies who mislead the public.[2] In a proper case the court will give close attention to such argument.

1. See Barron & Holtzoff, Federal Practice and Procedure § 1232.2 (1958).

2. See, Note, Tort Liability of Advertising Agencies, 12 N.Y.L.Forum 602 (1966).

It is not disputed that the defendant Greyhound Lines at the time in question had five through buses from Charleston to Washington. The plaintiff simply did not get on one. Counsel for the plaintiff urges that even though the advertisement contained no untrue statements, it affords sufficient ground for liability because it failed to point out that all of Greyhound's buses to Washington were not through buses but on the contrary was calculated to induce the plaintiff to believe that all buses to Washington were through buses. The advertisement is not, as a matter of law, susceptible to the interpretation that *all* schedules between Charleston and Washington were through schedules. The advertisement must be viewed as a whole to determine what message is conveyed to the "average" consumer and, as so understood, it goes no further than praising the through bus service offered. The plaintiff is a much traveled man. It is inconceivable that he thought only through service was available to the numerous points listed. His account of his conversation with the agent about his bag also indicates that he was aware that buses other than through buses might depart for Washington. When checking his bag in the morning before the departure, the plaintiff relates:

> I explained to the ticket agent on duty who took my bag and handed me the receipt that I must have the material in the bag with me and I wanted it to go on the bus with me even if there were an earlier bus, not that he'd indicated that there was * * *

If he believed the only buses were through buses he would not have been concerned about his baggage departing on an earlier bus.

██ Wherefore, it is ordered that summary judgment be entered in favor of the defendant Grey Advertising, Inc. and the motion of the defendant Eastern Greyhound Lines, Inc., is denied.

And it is so ordered.