GLENLYON DYE WORKS *vs.* INTERSTATE EXPRESS COMPANY
AND THE RHODE ISLAND COMPANY.

JULY 3, 1914.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Common Carriers.   Interstate Commerce.*

Defendant, an electric express company, operated between the towns of A. and
B.   In defendant's bill of lading which was filled out by plaintiff, no rate was
stated and no value of the goods shipped was declared, but defendant was
directed to ship the goods to their destination "via E. & P. Ex."   Defend-
ant would deliver the goods to the E. & P. Express Co. at B., and receive a
bill of lading stating, that the goods were received for shipment from the
defendant.   Defendant fixed no through rate and did not render shipper a
bill for through charges, but had an agreement with shipper for a local rate
over its own line irrespective of the character of the goods or their value,
and when the charges of the E. & P. Co. were to be prepaid, defendant
advanced the amount of these charges and in its bill to shipper placed said
amount as a separate item under the head of "advances."   The rates of the
E. & P. Ex. Co. between B. and C. were duly published and posted as required
by the interstate commerce act.   Shipper knew the rates of the E. & P. Co.
and that such rates were based upon the value of the goods shipped and that
if no value was declared the shipments would be considered as of the value
of $50 each, and no further liability would be assumed by the E. & P. Co.

The bill of lading of defendant stated that it "agrees to carry (the goods)
to the said destination if on its road, otherwise to deliver to another
carrier on the route to said destination," and a condition of the bill of
lading of defendant stated "no carrier shall be liable for loss or damage
not occurring on its own road or its portion of the through route nor after
said property is ready for delivery to the next carrier or to consignee.   The
amount of any loss or damage for which any carrier becomes liable shall be
computed at the value of the property at the place and time of shipment
under the bill of lading, unless a lower value has been agreed upon or is
determined by the classification upon which the rate is based, in either of
which events such lower value shall be maximum price to govern such
computation."

Certain shipments delivered by shipper to defendant routed "via E. & P. Ex."
to be sent to C. were lost after delivery to the E. & P. Co.

*Held,* that defendant by its bills of lading had fixed its status as an interstate
carrier and hence was subject to the interstate commerce act.

*Held,* further, that as the "initial carrier" under Section 20 of the Interstate
Commerce Act it was responsible for any loss or damage caused by it or any
carrier to which the goods were delivered in transit, notwithstanding the
provision in its own bill of lading by which it sought to restrict its liability
to damage occurring on its own road.

*Held,* further, that it was a part of defendant's undertaking to forward the goods to their destination through the E & P. Co., and by no other carrier.

*Held,* further, that the rate which shipper was to pay defendant for the through service was to be defendant's own rate to B., plus the rate of the E. & P. Co., which was based on a valuation of $50 on each shipment. This latter rate which was well known to shipper was based upon a classification as to value and hence a value lower than the actual value of the goods had been agreed upon and was determined by the classification as to value upon which the rate of the defendant was based.

*(2)   Common Carriers.   Interstate Commerce.*

Rates established by a carrier when approved by the Interstate Commerce Commission have the force of rates imposed by law and cannot be varied. Such a rate becomes binding upon all persons and all shippers are charged with knowledge of it as constituting the lawful rate.

*(3)   Common Carriers.   Interstate Commerce.   Evidence.*

In an action against an initial carrier for loss of goods where there was no mention in the bill of lading as to the rates of the carrier, either local or for through service, evidence as to the course of dealings between the parties showing the rates to have been based partly upon the rates of another connecting carrier, and that shipper had a thorough knowledge of the rates of such connecting carrier with reference to which the parties had contracted, was properly admitted.

TRESPASS ON THE CASE.   Heard on exceptions of plaintiff and overruled.

SWEETLAND, J.   This is an action on the case originally brought against the Interstate Express Company, as a common carrier, to recover for the value of three shipments of goods lost in transit between Phillipsdale, in the town of East Providence, and the city of New York. During the travel of the case, by agreement of counsel, the Rhode Island Company was made a party defendant.

The claim of the plaintiff for loss upon said three shipments amounted to $2,796.72 with interest, amounting to $751.62 in all to the sum of $3,548.34. The case was tried before a justice of the Superior Court sitting without a jury and said justice rendered a decision for the plaintiff for $50 upon each shipment, in all for the sum of $150. The case is before us upon the plaintiff's exceptions to certain rulings of said justice upon the admission of evidence and upon its exception to said decision.

It appeared in testimony before said justice that the plaintiff's business required it to make frequent shipments of goods; that from 1901 to 1907 it had carried such goods by its own wagons, from its works to the depot of the Earl & Prew Express Company, in Providence, a distance of about four miles; had there delivered said goods to the express company for shipment and had received therefore the bills of lading of the express company. Early in 1907 the Interstate Express Company established a line of electric express cars, operated by overhead trolley, between Providence and Phillipsdale; this business later passed into the hands of the Rhode Island Company. From the beginning of said electric express service until the time of the shipments in question, the plaintiff sent its goods to Providence by said electric express, which delivered said goods in Providence to the Earl & Prew Express Company. From January, 1907, until August, 1908, apparently with the acquiescence of the Earl & Prew Express Company, if not by its direction, the plaintiff filled out the blank receipts or bills of lading of the Earl & Prew Express Company for its goods, forwarded in this manner to said company. These bills of lading were signed by the electric express car conductors for the Earl & Prew Express Company, and were retained by the plaintiff. About August 1st, 1908, the Earl & Prew Express Company refused to permit the electric car conductors any longer to sign its receipts; and directed its servants to receive the shipments of the plaintiff from the electric express and to deliver to the electric express car conductors a receipt or bill of lading which should state that said shipments were received from the Rhode Island Company, thus ending any course of dealing by which it might appear that the electric express company was acting as the agent of the Earl & Prew Express Company. After August 1st, 1908, the plaintiff if it desired to ship goods through the Earl & Prew Express Company would fill out a blank receipt or bill of lading, furnished by the Rhode Island Company, and on the delivery of said goods to the electric express car conductor would

obtain his signature to said bill of lading, which bill was retained by the plaintiff.  In said bill the plaintiff would write "Via E. & P. Ex.," which indicated that said goods were to be shipped to their destination through the Earl & Prew Express Company.  The plaintiff would also indicate by the word "Paid" written in said bill that the charges of the Earl & Prew Express Company were to be prepaid by the electric express company, or by the word "Collect" that said charges were to be collected by said Earl & Prew Express Company from the consignee.  The electric express company would then deliver said goods to the Earl & Prew Express Company and receive its bill of lading for the same, stating that the goods were received for shipment from the Rhode Island Company.  The three shipments now in question were delivered to the defendant, the Rhode Island Company, in this manner; and the undisputed testimony is that the Rhode Island Company safely delivered said three shipments to the Earl & Prew Express Company; but the goods were never delivered to the consignees.

Save as to the names of the consignees and the descriptions of the goods, the three bills of lading, filled out by the plaintiff and signed by the car conductor of the Rhode Island Company, when said three shipments were delivered by the plaintiff to the Rhode Island Company, were in the same form and each was as follows:

"Original                   PROVIDENCE, R. I., 8–6, 1908.

   "RECEIVED FROM Glenlyon Dye Works
   "By THE INTERSTATE EXPRESS COMPANY.

"The property described below, in apparent good order except as noted (contents and conditions of contents of packages unknown), marked, consigned and destined as indicated below, which said company agrees to carry to the said destination, if on its road, otherwise to deliver to another carrier on the route to said destination.

"It is mutually agreed in consideration of the rate of freight hereinafter named, as to each carrier of all or any of

said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained, and which are hereby agreed to by the shipper and by him accepted for himself and his assigns as just and reasonable.

"The conditions of the regular bill of lading of the steamship company receiving this shipment are hereby made a portion of this contract and are binding the same as if expressed herein.

"CONSIGNEE          Vietor & Archelis, Dept. P. K.
"DESTINATION                    New York City, N. Y.

                                    "Weight
"Description of Articles.        Subject to Correction

      "1 case No. 1873
              "PAID
"Via E. & P. Ex.

"The conditions upon which the above mentioned property is received for transportation are printed on the back hereof.
        "THE INTERSTATE EXPRESS COMPANY,
                    "PER (Signed)          Hourd."

The only condition printed upon the back of said receipt which appears to us to be material is the following: "3. No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee. The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under the bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in

either of which events such lower value shall be maximum price to govern such computation."

The first question which arises in the consideration of the case is whether, in view of the course of dealing between the parties, and especially by reason of the terms of the condition quoted above, the defendant, the Rhode Island Company, is liable in any amount.  The defendant, and by that term, hereafter in this opinion, we shall refer to the Rhode Island Company, claims that it was acting simply as the teamer of the plaintiff, taking the place of the plaintiff's own wagons, in carrying the plaintiff's goods from Phillipsdale to Providence and delivering the same to the Earl & Prew Express Company; that it performed this service safely and was under no further liability; also that no loss or damage to said goods occurred on the road of the Rhode Island Company and hence it is not liable in accordance with the condition printed on the back of its bills of lading accepted by the plaintiff.  In support of this the defendant calls attention to the testimony showing the manner in which its charges and the charges of the Earl & Prew Company were paid by the plaintiff.  The defendant fixed no through rate from Phillipsdale to New York and it did not render to the plaintiff a bill for through charges.  The defendant did have an agreement with the plaintiff for a rate from Phillipsdale to Providence of six cents per hundred pounds, irrespective of the character of the goods or their value.  This charge of the defendant was paid by the plaintiff upon weekly bills rendered to the plaintiff on all goods carried and delivered to the Earl & Prew Company, whether the charges of the Earl & Prew Company were prepaid or that company was to collect its charges from the consignee.  When the charges of the Earl & Prew Company were to be prepaid the defendant advanced the amount of these charges, and, in its bill rendered to the plaintiff, placed said amount as a separate item under the head of "advances."

These and other circumstances in the dealings between the plaintiff and the defendant would lead to the conclusion

that the defendant was acting merely as the agent of the plaintiff in carrying the plaintiff's goods to the Earl & Prew Company and that when it had performed such service its liability was at an end. The defendant, however, by its bills of lading, in the three shipments now under consideration, has fixed its status in those transactions as an interstate carrier and hence it is subject to all the restrictive provisions prescribed by Congress in the Interstate Commerce Act and its amendments. It has undertaken to carry said goods from Phillipsdale to their destination in New York City, and by that fact, in accordance with the universally accepted rule, it was engaged in commerce between the states and was subject to the legislation of Congress. It became what is known as the initial carrier and according to the provisions of Section 20 of the Interstate Commerce Act, which section is known as the Carmack amendment, it was responsible for any loss or damage to said goods caused by it or any carrier to which said goods were delivered in transit, notwithstanding the condition printed upon the back of the defendant's bills of lading, by which it sought to restrict its liability to any loss or damage occurring on its own road. Said Carmack amendment (34 St. at Large 584) provides as follows: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed."

The question then arises, under the conflicting claims of the parties, whether in the circumstances of this case, the defendant is liable for the full value of the goods lost or in a less amount. The plaintiff claims that, under the

Carmack amendment and the terms of the defendant's bills of lading, expecially the terms of condition three printed on the back, it is entitled to recover the full value of said goods at the place and time of shipment.

It appeared in evidence that the rates of the Earl & Prew Express Company between Providence and New York were established, duly filed with the Interstate Commerce Commission and approved by it, and duly published and posted as required by the Interstate Commerce Law.   Those schedules state that the rate was based upon a value of not exceeding fifty dollars per shipment, and that no further liability is assumed by the company unless the shipper declares at the time of shipment a higher value.   If a value of more than fifty dollars upon the goods is declared by the shipper a higher rate is charged and greater precautions against loss are taken by the Earl & Prew Company.   In the defendant's bills of lading, which were filled out by the plaintiff, no rate is named, and no value of the goods shipped is declared, but the defendant is directed to ship the goods to destination through the Earl & Prew Express Company.

The plaintiff claims that notwithstanding the direction in the bills of lading, the defendant was not obliged to forward the goods through the Earl & Prew Express Company; that by a specific condition in its bills of lading it might have limited its liability in accordance with the limitations contained in the rates of the Earl & Prew Company, or it might have forwarded the goods through some other carrier which did not differentiate its rates in accordance with the classification based on value, as was done by the Earl & Prew Company.   The plaintiff has cited a number of cases which it claims supports this contention.   Those cases appear to us to hold merely that a carrier is not obliged to undertake to transport goods beyond its own lines; that it is at liberty to do so upon such terms, as to routes, as it may fix or agree upon.   The defendant has called to our attention a large number of decisions of the Interstate Commerce Commission to the effect that if an initial carrier undertakes to forward

goods beyond its own lines it is obliged by law to follow the shipper's directions as to routes, if any are given.   In this case moreover it was a part of the defendant's undertaking to forward the goods to their destination through the Earl & Prew Company and by no other carrier.   The plaintiff cannot be heard to urge that the rates of the Earl & Prew Company have no bearing on the case because the defendant might have disregarded its contract and sent the goods forward through some other carrier.

The defendant had no through rate from Phillipsdale to New York city on file with the Interstate Commerce Commission and approved by it.   It had never quoted to the plaintiff a through rate from Phillipsdale to New York City. Its charge for such service was its own rate of six cents per hundred pounds from Phillipsdale to Providence, which had been agreed upon between the parties, plus the charges of the Earl & Prew Company from Providence to New York, which the defendant had paid under the name of advances for the plaintiff.   The rates of the Earl & Prew Company, however, were filed with and had been approved by the Interstate Commerce Commission.   To secure equality, rates when so approved have been held to have the force of rates imposed by law and cannot be varied.   Such a rate becomes binding upon all persons and all shippers are charged with knowledge of it as constituting the lawful rate.

In *Gerber* v. *Wabash R. R. Co.*, 63 Mo. App. 145, 417, the court said:   "Considering the evils which the interstate commerce law was intended to remedy, would it, under any circumstances, be good policy to allow contracts made in violation of it to be enforced specifically?   We think not. Prior to its enactment, the complaint was almost universal that the common carriers were discriminating in their rates in favor of favored shippers.   To remedy this evil as to interstate shipments, congress enacted the law; and it should be construed and enforced so as not in the least to thwart its purpose.   Strictly speaking, the published schedules are not a part of the law itself, but are the results of the acts of

the carrier and the interstate commerce commissioners in execution of the law. But every shipper must be presumed to know of the existence of the schedules and that they are open for his inspection, and also of the terms of the act rendering invalid every contract of affreightment not made in accordance therewith. Therefore, where a contract for an interstate shipment has been made and is sued on, or property rights are made dependent thereon, the shipper must be held to have contracted with reference to and in accordance with the rates fixed by the schedules, regardless of the terms of his contract. In other words, the rates of interstate shipments are not the subject of contracts, but are in effect fixed under the law. To hold differently would be subversive of good policy and it would tend to nullify the law."

In *Louisville & Nashville R. R. Co.* v. *Dickerson*, 191 Fed. 705, at 709, the court said: "A rate once regularly published is no longer merely the rate imposed by the carrier, but becomes the rate imposed by law; and routes and rates once so established become matter of public right and forbid private contract inconsistent therewith. It results that, under the commerce act, a stipulation in a bill of lading for a rate greater or less than the published tariff is void."

It also appeared in testimony that the plaintiff had dealt with the Earl & Prew Express Company for years, had actual knowledge of the rates of that company, and knew that there were two rates each based upon the valuation of the merchandise declared by the shipper. The manager of the plaintiff corporation testified as follows: 12 Q. "In any event. You were aware, were you not, Mr. Blanchard, that the charges were higher on goods on which value was declared?" A. "In a general way, yes." 13 Q. "That there was a graduated charge?" A. "Yes." 14 Q. "Based upon value, in force by the Earl & Prew and Adams Express Company?" A. "I was."

It was also in testimony and not contradicted that the manager stated that he did not declare value on his shipments because it would be too expensive.

(1)   It thus appears that when the plaintiff delivered said three shipments to the defendant it directed that its goods should move by the Earl & Prew Company from Providence, and by that direction the defendant was bound; that the plaintiff knew the rates of the Earl & Prew Company; that those rates were based upon the value of the goods shipped, and that if no value was declared the shipments should be considered as of the value of fifty dollars each and no further liability would be assumed by the Earl & Prew Company; that the rate which it was to pay to the defendant for the through services to New York City was to be the defendant's own rate to Providence, plus the rate of the Earl & Prew Company, which was based upon a valuation of fifty dollars on each shipment.   Can it fairly be held otherwise than that the plaintiff's position, at least with reference to a loss after delivery of said shipments to the Earl & Prew Company, is the same as if it had specifically declared a value of fifty dollars on each shipment, by which declaration, made for the purpose of obtaining a lower rate, it would be bound?

In *Wells, Fargo & Co.* v. *Neiman-Marcus Co.*, 227 U. S. 469, the court said: "But the shipper in accepting the receipt reciting that the company 'is not to be held liable beyond the sum of fifty dollars, at not exceeding which sum said property is hereby valued, unless a different value is hereinabove stated,' did declare and represent that the value did not exceed that sum, and did obtain a rate which he is to be assumed to have known was based upon that as the actual value.   There is no substantial distinction between a value stated upon inquiry, and one agreed upon or declared voluntarily.   The rate of freight was based upon the valuation thus fixed, and the liability should not exceed the amount so made the rate basis."

In *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, the court said: "But when a shipper delivers a package for shipment and declares a value, either upon request or voluntarily, and the carrier makes a rate accordingly, the shipper is estopped upon plain principles of justice from recovering,

in case of loss or damage, any greater amount . . . The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied, must be conclusive in an action to recover for loss or damage a greater sum. . . . To permit such a declared valuation to be overthrown by evidence *aliunde* the contract, for the purpose of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward under-valuations and bring about preferences and discriminations forbidden by the law."

Moreover it appears to us that the parties by the terms of the bills of lading have provided as to the amount of loss for which the defendant should be liable.   We refer to a portion of the third condition printed on the back of the bills of lading, and quoted above, to the effect that in computing the amount of loss, if a value lower than the actual value "has been agreed upon or is determined by the classification upon which the rate is based . . . such lower value shall be maximum price to govern such computation."

It must be held that, within the contract of the parties, a part of the defendant's rate, to be paid by the plaintiff, was the rate of the Earl & Prew Express Company.  That latter rate, which was well known to the plaintiff, was based upon a classification as to value and hence a value lower than the actual value of the goods had been agreed upon and was determined by the classification as to value upon which the rate of the defendant was based.

It therefore appears to us as deducible from the course of dealings between the parties, from which their contract as to rates must be found, for the bills of lading are silent on that subject, and from the specific terms of the condition printed on the back of the bills of lading, that the liability of the defendant for the loss of the goods was limited to fifty dollars on each shipment.  The decision of said justice in that regard is without error unless said decision was based upon evidence improperly admitted.

The plaintiff has included in its bill a large number of exceptions to the rulings of said justice admitting evidence during the trial. We find no merit in any of these exceptions. The defendant sought to introduce some of said evidence for the purpose of showing the course of dealing between the parties in support of its contention that it was simply the agent of the plaintiff to transport said goods to Providence there to deliver them to the Earl & Prew Express Company; and that it had no further responsibility for said goods. The plaintiff claimed that this was an attempt to vary and contradict the terms of the written bills of lading and that such evidence was inadmissible. The justice admitted it *de bene esse*. The plaintiff has not been prejudiced by the admission of such evidence, as the Superior Court held that the defendant was an initial carrier who undertook the through transportation of said goods and was liable to the plaintiff for loss throughout the transit of said goods.

The other evidence, to the admission of which exceptions were taken, relates to the course of dealing between the parties showing the rates of the defendant for its service to Providence, and for through service. As to this matter there was no mention in the bills of lading, yet a finding with regard to it was essential to the determination of the controversy between the parties. This evidence tended to show that the rates of the defendant were based partly upon the rate of the Earl & Prew Express Company and also that the plaintiff had a thorough knowledge of the rates of the Earl & Prew Express Company with reference to which the parties had contracted. This evidence was properly admissible.

Although the evidence disclosed no liability on the part of the defendant, the Interstate Express Company, the decision of said justice appears to have been rendered against both defendants. As the Interstate Express Company has taken no exception to said decision we shall not disturb the decision in that regard.

All of the plaintiff's exceptions are overruled. The case is remitted to the Superior Court for the entry of judgment on the decision.

*Harold W. Thatcher, Seeber Edwards, Edwards & Angell,* for plaintiff.

*Joseph C. Sweeney, Nathaniel W. Smith, Frank P. Ayer, Clifford Whipple,* for defendant.