568　　Appellate Courts of Illinois.

Michelson v. Judson Freight Forwarding Co., 189 Ill. App. 568.

## Charles Michelson, Appellee, v. Judson Freight Forwarding Company et al., on appeal of Union Pacific Railroad Company, Appellant.

### Gen. No. 19,267.

1. Carriers, § 163*—*what limitation of liability is invalid.* Under section 20 of the Interstate Commerce Act as amended June 29, 1906, a stipulation in a bill of lading issued by an initial carrier, that its responsibility, with reference to a shipment shall cease on delivery to a connecting carrier, is invalid.

2. Carriers, § 192*—*what governs rights and duties of connecting carrier.* Where an initial carrier delivered a bill of lading for goods shipped, and guarantied a through rate and in consideration reserved the right of routing beyond its own terminal, the duties, rights and liabilities of a connecting carrier as to such shipment were referable to and governed by the terms and provisions of the bill of lading issued by the initial carrier.

3. Carriers, § 165*—*when limitation as to value of goods is valid.* A provision in a bill of lading limiting the amount recoverable in case of loss to five dollars per hundredweight, in consideration of the payment by the shipper of a lower lawful tariff rate, does not constitute an exemption from liability such as is forbidden by section 20 of the Interstate Commerce Act as amended June 29, 1906.

4. Carriers, § 41*—*when forwarding company may contract as to shipment.* In the absence of notice to the contrary, a carrier may assume that a freight forwarding company, by whom goods are delivered to it to be transported, is authorized to agree upon such terms of shipment as may be lawfully entered into.

5. Carriers, § 192*—*what rights of initial carrier connecting carrier succeeds to.* Where the duties, rights and liabilities of a connecting carrier as to a shipment of goods were referable to a bill of lading issued by an initial carrier, a provision limiting the amount of recovery in case of loss inured to the benefit of such connecting carrier.

Appeal from the Municipal Court of Chicago; the Hon. Harry Olson, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed with judgment here. Opinion filed November 25, 1914.

John A. Sheean, for appellant.

Roy D. Keehn, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

Suit was originally instituted in the Municipal Court by Charles Michelson against the Judson Freight Forwarding Company, the Southern Pacific Railroad Company and the Union Pacific Railroad Company, to recover the value of household goods destroyed by fire, while in course of shipment between Oakland, California, and the city of New York. By agreement of the parties the suit was dismissed as to the Judson Freight Forwarding Company and the Southern Pacific Railroad Company, and plaintiff then filed his amended statement of claim against the Union Pacific Railroad Company, alleging the operation by said defendant of a railroad between Ogden, Utah, and Sidney, Nebraska; that plaintiff was the owner of certain goods, specifically describing the same; that in October, 1907, in said Ogden, Utah, said defendant agreed for a consideration, to safely transport said goods from said Ogden to Chicago, Illinois, and deliver the same to the plaintiff or agent, and then and there received said goods for the purpose aforesaid; that not regarding its promise said defendant did not take care of said goods, or safely carry or deliver the same as aforesaid, but has neglected and refused so to do, etc.

The defendant filed its affidavit of merits, wherein it avers that in Ogden, Utah, it did not agree with plaintiff to safely transport goods of plaintiff from said Ogden, Utah, to Chicago, Illinois, and safely deliver the same to the plaintiff or his agent, but that defendant as a common carrier did, during said month, receive from the Southern Pacific Company a carload of goods in Union Pacific car No. 50,259, which at all the times mentioned was being transported under a written contract, marked "Exhibit A", upon each and every clause whereof defendant depends for its defense to the action; that the goods contained in the car in question were destroyed at Sidney, Nebraska, while in

the possession of defendant, and during the course of the transportation thereof, and that said goods were destroyed without any negligence or failure of duty in connection therewith on the part of defendant; that if the plaintiff was the owner of the goods in question at the time they were delivered to the Southern Pacific Company for transportation, he is estopped from denying that the consignor of the goods, the Judson Freight Forwarding Company, was his duly authorized agent for the purpose of contracting with defendant for the transportation in question, and is further estopped from denying that the contract hereinbefore referred to as "Exhibit A." is binding upon him, and is further estopped from denying that the Stringer Storage Company and Mrs. C. Michelson were his agents for the purpose of authorizing the Judson Freight Forwarding Company to ship the goods in question under such contract, for the reason that Mrs. C. Michelson was in sole possession of the said goods at the time they were delivered by her to the Stringer Storage Company and that the said goods were in possession of the Stringer Storage Company at the time they were delivered to the Judson Freight Forwarding Company for the shipment thereof, as aforesaid, and for the further reason that the Judson Freight Forwarding Company was clothed with apparent authority to ship the goods under such contract, and that neither defendant nor the Southern Pacific Company were apprised at the time of the shipment of any restriction of authority on the part of the Judson Freight Forwarding Company, as aforesaid, to enter into the contract hereinbefore referred to, and on the contrary, by virtue of the fact that no such restriction was brought to the notice of defendant nor to the Southern Pacific and by virtue of the fact that in the receipt given by the Judson Freight Forwarding Company to the Stringer Storage Company, the said Judson Freight Forwarding Company was authorized by the said Stringer Storage Com-

pany to ship the goods upon an agreed valuation as contained in said "Exhibit A", and a copy of which receipt so given by the Judson Freight Forwarding Company is attached and marked "Exhibit B"; that if the plaintiff was the owner of the goods as he alleges, he is estopped from claiming that said goods were at the time of their loss, of any greater value than $361.25, for the reasons hereinbefore set forth, and for the further reason that up to the time the shipment was received by the Southern Pacific Company, as aforesaid, neither the Southern Pacific Company nor any of its connecting lines handling said shipment were advised that the value was any more than the aforesaid sum of $361.25, and for the further reason that the Judson Freight Forwarding Company represented the value of said goods to be $361.25 and no more, which said sum was the amount agreed upon as the value of said shipment by the carrier and the shipper, and for the further reason that had it not been for the representation that the value of the goods was only $361.25, defendant would have charged a higher rate for the transportation of the goods in question than was, as a matter of fact, charged therefor; that at the time the shipment in question was delivered to the Southern Pacific Company that company was not notified of the fact that the consignment in question contained valuable paintings or pictures, as set forth in plaintiff's statement of claim, and if the value, as now claimed, had been stated to the Southern Pacific Company at the time the shipment was received, said paintings and pictures would not have been accepted by it as freight on account of their great value, and further that on account of these facts plaintiff is estopped from claiming a value over and above that actually represented to the Southern Pacific Company at the time of the receipt of said paintings and pictures, as aforesaid; that said goods described in plaintiff's statement of claim were not of the value alleged by

said plaintiff; that the owner of said goods collected from the Commercial Union Assurance Company the sum of $1,638.75, and has not given to the defendant "the benefit of any insurance effected by or on account of the said freight."

The cause having come on for hearing by the court, without a jury, plaintiff moved the court to strike from the files that portion of defendant's affidavit of merits which sets up as a defense the contract of carriage alleged to have existed between the Judson Freight Forwarding Company and the Southern Pacific Company, and also to strike therefrom all allegations relating to insurance. The motion was taken under advisement by the court and the court then proceeded to hear the evidence. Thereafter, on November 16, 1912, the court overruled said motion of the plaintiff and took the case under advisement indefinitely. On November 23rd, following, the order overruling said motion was vacated, and said motion to strike was allowed. On January 7, 1913, defendant submitted to the court certain propositions to be held as the law of the case, which propositions were refused, and thereupon the court made the following statement:

"For the information of the Appellate Court, the trial court states that the principal reason for refusing the propositions of law aforesaid tendered was that the trial court does not regard the contract offered by defendant in evidence as a contract of through shipment, but only a contract to carry from Oakland, Cal., to Ogden, Utah."

On the same day there was a finding and judgment against defendant for $7,586.50, to reverse which judgment it prosecutes this appeal.

The uncontroverted facts are substantially as follows: In October, 1907, Mrs. Michelson, the wife of appellee, employed the Stringer Storage Company at San Francisco, California, to pack and prepare the household goods in question for shipment by rail, and

in pursuance to such employment said company so packed and prepared said goods and delivered the same to the Judson Freight Forwarding Company, which was engaged in the business of procuring and assembling goods for shipment by freight in carload lots, thereby securing to shippers the benefit of carload rates.

Upon the delivery of the goods to the Judson Freight Forwarding Company the Stringer Storage Company executed a shipping order and release as follows:

"To Agent, Judson Freight Forwarding Co.
    San Fran, Cal.
Please forward lot of houshold goods consigned and marked:   To C. Michelson,........................
Street c/o New York American Station New York, N. Y.

"In consideration of the reduced rate made for the shipment of my household goods, it is understood and agreed that Judson Freight Forwarding Co. acts only as agents for the shipper and is not responsible for damage or loss beyond the amount which may be collected from the Railroad Companies over whose lines said goods are forwarded.

"Desiring to receive the benefit of the reduced rate, I assume all risk of breaking or chafing and release goods to the value of $5.00 per cwt. in case of loss or damage, and subject to other printed conditions of Judson Freight Forwarding Co.'s freight receipt and regular Bill of Lading issued by the railroad company via whose lines goods are forwarded.

"It is further expressly agreed that Judson Freight Forwarding Co. will not be responsible for loss or damage of goods by fire or otherwise in excess of $5.00 per cwt. valuation while in their care in warehouses awaiting shipment.

"Weight 7225.   Rate $2.75 per 100 pounds From San Fran Cal. To New York City.

"Signed in Duplicate.   Stringer Storage Co. Consignor or his (or her) agent.      Sam Brogden."

The Judson Freight Forwarding Company then

574    Appellate Courts of Illinois.

Michelson v. Judson Freight Forwarding Co., 189 Ill. App. 568.

gave to the Stringer Storage Company a receipt in form as follows:

"San Francisco, Cal. 1907.

"Received from Stringer Storage Co., the following described freight (contents and value unknown), to be forwarded to nearest distributing point after receipt of same.

"This receipt is given and received with the express understanding that the goods herein described are all secondhand household goods and are subject to be shipped by the Judson Freight Forwarding Co. as part of a carload, and that said Company, acting only as agents for shippers, is not responsible for damage or loss beyond the amount which may be collected from the Railroad Companies over whose lines said goods are shipped.

"Consigned to C. Michelson. Destination New York City. Street Address C/O New York American. Via Point of Distribution Chicago."

Here follows a description and designation of the several packages, cases and crates, and their contents, and a statement of the amount of freight at $2.69 per hundredweight, also a clause as follows: "Released to valuation of $5.00 per cwt., and entirely at owner's risk."

The goods were then delivered by the Judson Freight Forwarding Company to the Southern Pacific Railroad Company and loaded in car No. 50,259, and said Southern Pacific Railroad issued its bill of lading therefor, the material portions of which, here involved, are as follows:

"Delivered to the Southern Pacific Company, at Oakland the following described packages, in apparent good order (contents and value unknown) consigned as marked and numbered below, to be carried upon the conditions expressed herein to the Company's freight station at Ogden, and there delivered in like good order to the consignee or owner, or to order of said consignee or owner, or to such Company or Carriers (if the same are to be forwarded beyond said station)

whose line may be considered a part of the route to the place of destination of said goods or packages; it being distinctly stipulated that the responsibility of this Company shall cease at the Station where delivered to such person or carrier.

"It is further stipulated that the service to be performed hereunder shall be subject to the conditions, whether printed or written, herein contained, and said conditions are hereby agreed to by the shipper and by him accepted for himself and his assigns as just and reasonable.

\* \* \*

"Routing: To enable it to guarantee through rates the absolute and unqualified right of routing beyond its own terminal is reserved by the Southern Pacific Company.

\* \* \*

"Responsibility: The responsibility of this Company and each succeeding carrier for loss or damage does not extend beyond its own line.

\* \* \*

"Adjustment of Losses: Except when otherwise agreed, the value or cost of property at place and date of shipment is to govern settlement and carrier is to have the benefit of any insurance effected by or on account of the owners of said freight.

\* \* \*

"Release: Desiring to receive the benefit of any lower rate provided for freight upon carriers being released, or at owner's risk, at a specified value of ...................in consideration of such lower rate being applied on the within shipment, we hereby agree that none of said carriers is to be liable for any loss or damage of any kind, except such as may be caused by its gross negligence, and that the goods covered by this Bill of Lading are of the value of $5 per cwt., and that in no event is carrier to be liable for any loss of or damage to said goods from any cause in excess of the valuation above named.

Judson Frt. Frd. Co., Shipper,
NELSON.
Judson Frt. Frd. Co.,
Shipper.

"Received the following described packages, in apparent good order (contents and value unknown) consigned as marked and numbered below, to be transported upon the conditions expressed herein to the Company's Freight Station at Ogden, and there delivered in like good order to the consignee or owner, or to order of said consignee or owner, or to such Company or Carriers (if the same are to be forwarded beyond said station) whose line may be considered a part of the route to the place of destination of said goods or packages, it being distinctly stipulated that the responsibility of this company shall cease at the Station where delivered to such person or carrier.

"It is further stipulated that the service to be performed hereunder shall be subject to the conditions, whether printed or written, herein contained.

"Station Oakland.    Date 10/1/07.    G. W. Fletcher, Agent.

"Marks, Consignee and Destination: Judson Freight & Forwarding Co., 349 Marquette St., Chicago, Ill.

"Car No. 50259.    Initials U. P.    Route via Southern Pacific Co., U. P., C. M. & St. P.

"(Blank spaces below will be filled in by Agent.)

"Rate of freight named above is guaranteed on this shipment for the transportation from Oakland to Chicago.

G. W. Fletcher,<br>Agent.''

The tariff rate, on file with the Interstate Commerce Commission, for household goods in carload lots between Oakland and Chicago, when released to a valuation of $5 per cwt., was $1.12½ per hundredweight with a 20,000 pound minimum, and the rate on the same goods in carload lots between said points, when not released to a valuation of $5 per cwt., was $1.75 per hundred pounds. The rate on the same goods in less than carload lots, under released valuation, was $3.40 per hundred pounds, and when the valuation was not released, $5.10 per hundredweight. The freight charged and paid for the shipment in question between Oakland and Chicago was $1.12½ per hundredweight.

At or about the time the goods in question were received by the Southern Pacific Railroad Company at San Francisco, the wife of appellee took out $2,000 insurance on the same, and thereafter the insurance company paid to appellee for the loss $1,638.75; the difference between said $2,000 insurance and $1,638.75, the amount paid, or $361.25, representing a valuation of $5 per hundredweight on 7,225 pounds, the actual weight of the goods.

The car in which the goods were loaded was transported by the Southern Pacific Railroad Company to its station at Ogden, Utah, where the car was turned over by it to appellant, the Union Pacific Railroad Company, to be transported to Chicago. The car with its contents was destroyed by fire at Sidney, Nebraska, while in the possession of and while being so transported by appellant.

Samuel L. Brogden, the manager of the Stringer Storage Company, testified on behalf of appellant that when he was called to the home of appellee in San Francisco he told Mrs. Michelson that household goods were generally shipped through the Judson Freight Forwarding Company, which was in a position to give a lower rate than the railroads gave because the railroad rate on carload lots was considerably less than the railroad rate on less than carload lots; that he explained to her the difference between the released and nonreleased rates as applied to carload lots, and advised her to take out insurance to cover the difference in case of a total loss of the goods, and that Mrs. Michelson instructed him to ship the goods through the Judson Freight Forwarding Company under the released freight rate plan and to effect insurance on the goods to the amount of $2,000.

Mrs. Michelson was not present at the trial, but it was admitted by appellant that if she were present she would testify that she did not give any direction to Mr. Brogden as to the manner in which the goods

578      APPELLATE COURTS OF ILLINOIS.

Michelson v. Judson Freight Forwarding Co., 189 Ill. App. 568.

should be shipped, and that nothing was said by him or by her with reference to whether or not the shipment should be handled in any respect by the Judson Freight Forwarding Company. The actual value of the goods as claimed by appellee is not controverted by appellant.

Several of the propositions of law submitted by appellant and refused by the court are predicated upon the theory that the bill of lading issued by the Southern Pacific Railroad Company constituted the contract with appellee for the carriage of the goods from Oakland to Chicago by the Southern Pacific Railroad Company and by appellant as its connecting carrier, and that all the lawful provisions of said contract inured to the benefit of appellant.

On behalf of appellee it is insisted that the only written contract providing for the transportation of the goods, viz., the bill of lading issued by the Southern Pacific Railroad Company, is a contract between that company and appellee for the carriage of the goods from Oakland to Ogden; that said contract was never adopted by appellant and cannot be availed of by it as governing the carriage of the goods from Ogden to Chicago, and that its provisions did not inure to the benefit of appellant; that this action by appellee against appellant is upon an implied contract by appellant to safely carry and deliver said goods from Ogden to Chicago.

Section 20 of the Interstate Commerce Act, as amended June 29, 1906, and uniformly referred to as the Carmack Amendment, provides as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over

whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage, or injury, as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

In *Adams Exp. Co. v. Croninger*, 226 U. S. 491, the Court said:

"The significant and dominating features of that amendment are these:

"First: It affirmatively requires the initial carrier to issue 'a receipt or bill of lading therefor,' when it receives 'property for transportation from a point in one State to a point in another.'

"Second: Such initial carrier is made 'liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it.'

"Third: It is also made liable for any loss, damage, or injury to such property caused by 'any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass.'

"Fourth: It affirmatively declares that 'no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed.'"

It was there further said:

"That the legislation supersedes all the regulations and policies of a particular State upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill

580    APPELLATE COURTS OF ILLINOIS.

Michelson v. Judson Freight Forwarding Co., 189 Ill. App. 568.

of lading which he must issue and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the State upon the subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the State ceased to exist. *Northern Pacific Ry. v. State of Washington,* 222 U. S. 370; *Southern Railway v. Reid,* 222 U. S. 424; *Mondou v. Railroad,* 223 U. S. 1."

The holding in the *Croninger* case, *supra,* was approved and followed in *Chicago, B. & Q. Ry. Co. v. Miller,* 226 U. S. 513, and *Kansas City Southern Ry. Co. v. Carl,* 227 U. S. 639. See also *Gamble-Robinson Commission Co. v. Union Pac. R. Co.,* 262 Ill. 400.

In *Atlantic Coast Line R. Co. v. Riverside Mills,* 219 U. S. 186, it was said:

"The indisputable effect of the Carmack Amendment is to hold the initial carrier engaged in interstate commerce and 'receiving property for transportation from a point in one State to a point in another State' as having contracted for through carriage to the point of destination, using the lines of connecting carriers as its agents."

Without doubt, if this action had been brought against the Southern Pacific Railroad Company alone, it could not have avoided liability upon the ground that its contract of carriage did not extend beyond Ogden, Utah. The stipulation in the bill of lading that its responsibility with reference to the shipment should cease upon delivery to its connecting carrier was invalid. *Atlantic Coast Line R. Co. v. Riverside Mills, supra.*

The destination of the shipment is stated in the bill of lading as Chicago, and a through rate from Oakland to Chicago is thereby guarantied by the Southern

Pacific Railroad Company, which, in consideration thereof, reserved to itself the absolute and unqualified right of routing beyond its own terminal. The Southern Pacific Railroad Company undertook to deliver the goods at Ogden to the company or carrier whose line it elected to consider a part of the route to the place of destination of the goods. The goods were delivered to appellant at Ogden, by the Southern Pacific Railroad Company, and were transported by appellant upon its line, as the agent of the Southern Pacific Railroad Company, under and by virtue of the bill of lading issued by the Southern Pacific Railroad Company. The duty of appellant to transport the goods and its rights and liabilities incident to such duty, are referable solely to said bill of lading, and are governed by all the valid terms and provisions therein contained. *Cranor v. Southern Ry. Co.* (Ga. App.) 78 S. E. 1014.

In *Kansas City Southern Ry. Co. v. Carl,* 227 U. S. 639, it is said:

"The liability of any carrier in the route over which the articles were routed, for loss or damage, is that imposed by the act as measured by the original contract of shipment so far as it is valid under the act."

The provision in the bill of lading limiting the amount recoverable, in case of loss, to $5 per hundredweight in consideration of the payment by the shipper of a lower lawful tariff rate, does not constitute an exemption from liability, such as is forbidden by the Carmack Amendment. *Adams Exp. Co. v. Croninger, supra; Kansas City Southern Ry. Co. v. Carl, supra; Great Northern Ry. Co. v. O'Connor,* 232 U. S. 508.

Whether the provision in the bill of lading that in case of loss the carrier should have the benefit of any insurance voluntarily effected by the owner of the goods was enforceable by the initial carrier, and if so whether such provision inured to the benefit of appellant, are questions not involved upon this record, because appellant, by the eighth proposition of law sub-

582     APPELLATE COURTS OF ILLINOIS.

Michelson v. Judson Freight Forwarding Co., 189 Ill. App. 568.

mitted to the trial court, expressly invited a finding that appellant could not rely upon the validity of such provision under the facts in this case.

It is urged, however, that neither the Stringer Storage Company nor the Judson Freight Forwarding Company was authorized by defendant in error to contract with the initial carrier for the transportation of the goods at a lower rate, in consideration of a released valuation.

The carrier was not concerned with the question of the title to the goods, and, in the absence of notice to the contrary, had a right to assume that the Judson Freight Forwarding Company, by whom the goods were delivered to it to be transported, was authorized to agree upon such terms of shipment as might be lawfully entered into. In *Great Northern Ry. Co. v. O'Connor*, 232 U. S. 508, where a somewhat similar situation was involved, it was said:

"The plaintiff contended, however, that she had expected her goods to be transported as a separate consignment. But the Transfer Company had been entrusted with goods to be shipped by railway, and, nothing to the contrary appearing, the carrier had the right to assume that the Transfer Company could agree upon the terms of the shipment, some of which were embodied in the tariff. The carrier was not bound by her private instructions or limitations on the authority of the Transfer Company, whether it be treated as agent or forwarder. If there was any undervaluation, wrongful classification or violation of her instructions, resulting in damage, the plaintiff has her remedy against that Company."

The next question that arises is whether or not the provision in the bill of lading relating to the agreed valuation of the goods, whereby the liability of the initial carrier, in case of loss, is limited to $5 per hundredweight, inured to the benefit of appellant, the connecting carrier.

If, as we have hereinbefore held, the duty of appel-

lant to transport the goods to destination, and its rights and liabilities incident to such duty, are referable solely to the bill of lading issued by the initial carrier, it logically follows that all the valid terms and provisions contained in said bill of lading must be held to inure to the benefit of appellant. It was so expressly held in *Kansas City Southern Ry. Co. v. Carl,* 227 U. S. 639, concerning the agreed valuation clause in a bill of lading. It was there said on page 648:

"As the shipment was interstate, the contract was controlled by the twentieth section of the act of Congress of June 29, 1906. The initial carrier under that provision of the Interstate Commerce Act, as an interstate carrier, holding itself out to receive shipments from a point upon its own line in one State to a point in another State upon the line of a succeeding and connecting carrier, came under liability not only for its own default but also for loss or damage upon the line of a connecting carrier in the route: *Atlantic Coast Line v. Riverside Mills,* 219 U. S. 186. Any stipulation in its own receipt was ineffective in so far as it was not authorized by the section of the act referred to, whether intended for its own benefit or that of the succeeding carrier. It is also true that any limitation of liability contained in its contract which would be valid in its own behalf would likewise inure to the benefit of its connecting carrier. The liability of any carrier in the route over which the articles were routed, for loss or damage, is that imposed by the act as measured by the original contract of shipment so far as it is valid under the act. This provision of the Interstate Commerce Act has been so fully considered and decided that we need not go further into the matter: *Adams Express Company v. Croninger,* 226 U. S. 491; *Chicago &c. Ry. v. Latta,* 226 U. S. 519; *Chicago &c. Ry v. Miller,* 226 U. S. 513. That provision, under the opinions above cited, does not forbid a limitation of liability in case of loss or damage to a valuation agreed upon for the purpose of determining which of two alternative lawful rates shall apply to a particular shipment."

See also *Cranor v. Southern Ry. Co.* (Ga. App.), 78 S. E. 1014.

There is nothing in the record in the case at bar that questions the good faith of any of the parties to the transaction.

The trial court found as a matter of fact "that the destruction of the goods in question at Sidney, Nebraska, on the 18th day of November, 1907, as admitted and proved in this case, was not due to any negligence or failure of duty on the part of the defendant, Union Pacific Railroad Company."

The court erred in striking from the files that portion of appellant's amended affidavit of merits in regard to any contract existing or alleged to have existed between the Judson Freight Forwarding Company and the Southern Pacific Railroad Company and in refusing to hold the sixth, ninth and twelfth propositions of law submitted by appellant.

As the questions involved are determinable solely upon a consideration of the federal law, as interpreted by the courts exercising authoritative jurisdiction in such matters, we have refrained from any discussion of the policies or regulations adopted or enacted by the States of Illinois and California, relative to intrastate shipments, as being without controlling influence.

The judgment of the Municipal Court is reversed and judgment will be here entered in favor of appellee and against appellant for $361.25, being $5 per hundredweight valuation on 7,225 pounds, the actual weight of the shipment involved.

The costs in this court will be taxed against appellee.

*Reversed with judgment in this court in favor of appellee and against appellant for $361.25.*