YORKE FURNITURE COMPANY v. SOUTHERN RAILWAY
COMPANY.

(Filed 7 May, 1913.)

Carriers of Goods—Cars Requested—Cars Furnished—Agreed Rate
—Interstate Commerce Commission's Rules—Interstate Commerce.

A consignor of an interstate shipment requested two cars of certain dimensions from the carrier, sufficient for the purpose, which the carrier was unable to furnish, though of a size constantly used; and it furnished for the shipment smaller cars, requiring four, upon which the freight rate was greater. These smaller cars were, under the circumstances, billed at the rate of the larger cars, and the consignee was charged the greater rate, which the shipper had to pay under his contract of delivery: *Held,* that while the rates fixed by the Commission should prevail against the other carriers, as to the one charged with the duty of supplying the cars at the point of shipment, or taking part in such initial arrangement, the shipper could recover, this being a case expressly provided for by the rule of the Interstate Commerce Commission, and coming directly within its terms.

APPEAL by defendant from *Daniels, J.,* at August Term, 1912, of CABARRUS.

Civil action to recover $46.35, and interest, tried on appeal from a justice's court.

The jury rendered the following verdict:

"1. Is the defendant indebted to the plaintiff; if so, in what amount? Answer: Yes; $46.35, with interest from 30 September, 1907."

Judgment on the verdict, and the defendant excepted and appealed.

*J. Lee Crowell for plaintiff.*
*L. C. Caldwell for defendant.*

HOKE, J. The evidence on part of plaintiff tended to show that in January, 1907, plaintiff company, desiring to ship an assortment of furniture from Concord, N. C., to Kansas City, Mo., applied to the agent of defendant company for two 50-foot cars. That these cars were adequate for the purpose, and on the route designated and for cars of that size the proper rate was 88 cents per hundred pounds. That after much delay the agent finally succeeded in obtaining cars for the shipment, but having been unable to procure cars of the size ordered, supplied four 36-foot cars, this number being required for the goods shipped, owing to the smaller size. That by reason of this change in the size of the cars, the regular freight rate as shown by the printed and published schedules on file with the Interstate Commerce Commission was $1.10½ per hundred pounds, making a difference of $46.35 on the entire shipment. It was shown further that at the time of shipment the agent of defendant stated that he had been unable to furnish cars of the size ordered, but that the company would protect the shipment at the rate of 88 cents, and this was the rate specified in the bill of lading; the full amount as per scheduled rate having been paid by the plaintiff on arrival of goods at Kansas City. The action is instituted against defendant, the initial carrier, for the amount paid in excess of 88 cents, to wit, $46.35. The position insisted on by defendant, that notwithstanding the specifications of the bill of lading the plaintiff was properly chargeable according to the printed and published schedules of the company on file with the Interstate Commerce Commission, is undoubtedly correct (*Texas, etc., Ry. v. Mugg,* 202 U. S., 242); but the charge of the court is in full recognition of this principle, and defendant has been held responsible not

so much by reason of the stipulations of the bill of lading, but because of its failure to furnish the cars of the capacity ordered and the proper rate chargeable in cars of that size.

Rule 339 of the Interstate Commerce Commission, issued 9 March, 1912, supplied us on argument by counsel, seems to be directly applicable to the case and is as follows: "Upon informal complaints and numerous inquiries it is held that the act of a carrier in furnishing two small cars in lieu of a larger car ordered by the shipper under appropriate tariff authority is binding, at the rate and minimum applicable to the car ordered, upon all the carriers that are parties at the point of origin; the shipper is entitled to all privileges in transit, to reconsignment, and to switching at the same charges as would be applicable under the joint tariff had the shipment been loaded into one car of the capacity ordered; and demurrage will likewise accrue on that basis. If the shipment moves beyond the point to which the joint rate applies, the connecting line or lines are entitled to and should collect their transit, reconsigning, switching, and demurrage charges as provided in their own tariffs. In all cases the initial carrier will be liable for such additional charges as may be imposed on the shipper by reason of its failure to furnish a car of the capacity ordered. Carriers that are parties to the joint rate under which the shipment commences to move may share in such additional expense so incurred by the initial carrier."

This rule embodied in the charge of the court announces and approves the position upon which plaintiff's recovery is predicated, and on the facts presented we are of opinion that there has been no error in the disposition of the case.

No error.