The authorities here collected are sufficient to indicate that a guarantor is jointly liable with the maker only when he executes such guaranty at a time when as indorser he is transferring the note to another, or at the date of the making of the note; and that if the guaranty is executed under different conditions it becomes a separate contract, and a separate cause of action exists against the guarantor from that arising by virtue of the note against the maker, and the guarantor's liability is neither joint nor joint and several with that of the maker.

Without an averment in this petition to the effect that at the time of the making of the note by Wolf to Walker the note was indorsed with the guaranty of Bueker, our opinion is that no action may be brought against Wolf and Bueker jointly. If the plaintiff can not make such an averment, he is entitled to proceed against either Wolf or Bueker separately; in the one case for the collection of his note, in the other for a realization on the liability of the guarantor.

While the demurrer is general, yet for the purposes of the case we believe it should be taken as one, on the ground that separate causes of action against several defendants are improperly joined, and, so taken, should be sustained.

---

## CONSTRUCTION OF RAILWAY TARIFF PROVISIONS.

Common Pleas Court of Hancock County.

NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY v. THE MILLER CITY TILE CO.

Decided, September Term, 1916.

*Rates on Interstate Freight—Shipper Can not Profit from Mistake of Carrier's Agent—Class Tariffs and Commodity Tariffs—Ascertainment of Legal Rate to Points Not Named in the Schedule.*

1. The rates for the transportation of interstate freight when once lawfully established are unalterable, either by the shipper, the carrier, or both; and the Interstate Commerce Commission alone has power originally to entertain proceedings attacking the same as unreasonable.

2. The mistake of the carrier's agent in naming a rate is no bar to an action against the shipper for an undercharge.

3. A "class" tariff provides rates applicable to all classes of freight and to all points where the same has not been modified or specially provided for by special action ·known as the "commodities" tariff.

4. The inhibition of Section 4 of the Interstate Commerce Act against the greater charge for a longer distance is modified by the latter provision which allows the .commission to authorize the carrier in special cases to charge less for a longer than a shorter distance, and to prescribe the extent to which the carrier may be relieved from the operation of the act.

5. Every provision of the tariff must be given effect, if possible, and where a general provision is followed later by a special, the latter must be held a modification of the former. Accordingly, where the tariff provides a rule whereby the rate for the next more distant point is to apply to points not named in the schedule, an exception is made as to a given point by the use of a reference in the schedule to a contrary provision as to said point. If this occurs in the "commodities" tariff, resort must be had to the "class" tariff to determine the rate applicable.

*Burket & Burket* and *Frank B. Carpenter,* for plaintiff.
*W. S. Snook,* contra.

DUNCAN, J.

This suit involves the interpretation of an interstate freight tariff schedule applicable to certain railroads.

During the months of November and December of 1913, the defendant shipped on a through bill of lading ten carloads of drain tile of 30,000 pounds minimum weight from Miller City on plaintiff's line in Ohio, some to Hemlock and others to Merrill on the Pere Marquette in Michigan, both places being between Saginaw and Breckenridge, also on the Pere Marquette in the latter state. The shipments were routed by the defendant and were moved from Miller City over the plaintiff's line east to Leipsic, thence north over the Cincinnati, Hamilton & Dayton to Toledo, thence north on the Pere Marquette to Saginaw, and thence west over the Pere Marquette to Hemlock or Merrill, as happened to be the destination. The shipments might have been routed over the plaintiff's line *west* to Thomaston and

thence in a northeasterly direction over the Pere Marquette
through Breckenridge to Merrill or Hemlock, as it happened to
be, the same destination. The latter route probably would have
been selected by the plaintiff, being the initial carrier, as this
would have given it a longer haul. The route over which the
shipments moved was probably the shorter. There is not much
difference, however. I refer to the map for the location of the
several points and the approximate comparative distances.

The Cincinnati, Hamilton & Dayton, the Pere Marquette, and
the plaintiff's line, the New York, Chicago & St. Louis, are all
parties to the tariff schedules; the rates authorized are joint
rates. The rates are joint over either route, and no distinction
is made as to who routed the shipments as far as the tariff is
concerned. The claim is that the defendant is precluded by his
selection of this route from demanding the lesser rate of an-
other route, and there is good authority for the contention.
*Barnes on Interstate Transportation,* Sections 188 and 191.

It is agréed that the rate to Breckenridge by either route over the Pere Marquette is eight cents per hundred pounds, and that the rate to Saginaw by either route is eight and a half cents per hundred pounds. The eight cent rate was paid, but the plaintiff claims that a mistake was made by its agent; that the rate to Hemlock or Merrill over the route the shipments moved was eleven cents per hundred pounds. This suit is brought, therefore, to collect the difference, amounting to the sum of $101.04. That recovery may be had for an undercharge in such case is well established. *L. & N. Rd. Co.* v. *Maxwell*, 237 U. S., 94 (59 L. Ed., 853; L. R. A. 1915 E, 665, 8); *K. City S. Rd. Co.* v. *Carl*, 227 U. S., 639, 653 (57 L. Ed., 683); *B. & M. Rd. Co.* v. *Hooker*, 233 U. S., 97, 110-113 (58 L. Ed., 868, 875, 876; L. R. A. 1915 B, 450); *Barnes on Interstate Transportation*, Sections 244, 302-03; *G., C. & St. F. Ry. Co.* v. *Hefley*, 158 U. S., 98 (39 L. Ed., 910); *York Furniture Co.* v. *Southern Ry. Co.*, 78 S. E., 67. So the question here is to find what was the rate for drain tile shipped in the months of November and December, 1913, from Miller City, Ohio, to Hemelock or Merrill in Michigan, via the New York, Chicago & St. Louis, the Cincinnati, Hamilton & Dayton, and the Pere Marquette.

If I understand the matter, there are two kinds of freight tariffs, a "class" tariff and a "commodities" tariff. A "class" tariff is the tariff generally applicable to all shipments—to all freight and to all points not otherwise provided for. The "commodities" tariff is a tariff provided by the carrier for a certain class of freight to certain points. It is necessary, of course, that both have the approval of the Interstate Commerce Commission, and it is made unlawful for the carrier to depart therefrom on penalty. Even a mistake of the carrier's agent, as we have seen, will not relieve the shipper as against his liability for an undercharge. It therefore follows, unless there is a "commodities" tariff provided for any certain class of freight and to the point in question, that the "class" tariff must apply. That is to say, the "class" tariff applies to every shipment not otherwise specifically provided for.

As to the freight in question, tile drain, there is a "commodities" tariff, over the several railroads, and Miller City is

given as one of the stations *from* which the rates apply. In naming the points *to* which the rates apply, the stations Hemlock and Merrill are not named. On page 4 of the tariff sheet there is a provision for the application of the rates to intermediate points as follows:

"Rates provided in this tariff apply from and to points named only, except that rates from or to intermediate points not named will be the same as shown in tariff from or to the next more distant point from or to which rates are named."

The "next more distant point  *  *  *  to which rates are named" on the route over which these shipments moved, is Breckenridge. Breckenridge, as already stated, has a rate of eight cents per hundred pounds, but we find that there is a mark (2) on the rate sheet next to this rate for Breckenridge, which refers to another provision of this tariff which reads: "Terminal rate only and will not apply to intermediate points." As these provisions are in this "commodities" tariff, which has been approved by the Interstate Commerce Commission, both must stand as valid provisions, if they can be made to do so, upon any reasonable theory, and as the former is a general provision and the latter a special, the former must yield to the latter as a modification. As it could only be claimed that by the operation of the former provision the "commodities" tariff applied to stations Hemlock and Merrill, that provision being modified by the exception made by the latter provision, we are necessarily driven to the "class" tariff for the rate applicable to these shipments. The "class" rate is eleven cents per hundred pounds, and eight cents per hundred pounds having been paid, it follows that the plaintiff is entitled to recover the difference, making the amount claimed in the petition.

This interpretation most assuredly allows the carrier to charge more for a shorter distance than a longer distance, and if it stood alone, would be in violation of that part of Section 4 of the Interstate Commerce Act, which provides that "it shall be unlawful for any common carrier, subject to the provisions of this act, to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind

of property under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance." It is provided, however, in the latter part of this same section that upon application to the Interstate Commerce Commission "such common carrier may, in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section of this act," thus leaving the whole matter within the discretion of the Commission. If this is not so, the provision for the application of the rate for the "next more distant point," would also be invalid and for the same reason.

To show the view taken by the Commission as to its jurisdiction in the premises, Commissioner Harlan in *Poor Grain Co.* v. *Chicago B. & O. Rd. Co.*, 12 I. C. Rep., 418, 422, 469, says:

"When once lawfully published, a rate, so long as it remains uncanceled, is as fixed and unalterable either by the shipper or by the carrier as if that particular rate had been established by a special act of Congress. When regularly published it is no longer the rate imposed by the carrier, but the rate imposed by the law."

See also Drinker on Interstate Commerce Act, Section 240.

It is also held by the Supreme Court of the United States that the Commission alone has power originally to entertain proceedings for the alteration of an established schedule, on the ground that the rates fixed therein are unreasonable and that a shipper who has been compelled to pay such rates has no redress in either the state or federal courts until the Commission, after investigation, has declared the tariff rates unreasonable. *Tex. Pac. Rd. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S., 426 (51 L. Ed., 553); see also *L. & N. Rd. Co.* v. *Maxwell*, 237 U. S., 94 (59 L. Ed., 853; L. R. A., 1916, E. 665-8); *K. City Rd. Co.* v. *Carl*, 227 U. S., 639, 653 (57 L. Ed., 683); *B. & M. Rd. Co.* v. *Hooker*, 233 U. S., 110, 113 (58 L. Ed., 868, 875, 876; L. R. A.,

1915, B. 450); *Gerraty* v. *Atl. C. L. Rd. Co.*, 211 Fed., 227-8. The opinion in the latter case was written by Justice Day of our own state, in the course of which he says:

"If the charges filed were unreasonable, the only attack that could be made upon such regulation would be by proceedings contesting their reasonableness before the Interstate Commerce Commission."

And the Supreme Court of Ohio, in *Swift & Co.* v. *H. V. Rd. Co.*, 93 O. S., 143, having under consideration the validity of demurrage charges provided in the tariff, approved by the Interstate Commerce Commission, holds:

"Where a demurrage rule, named in the tariff filed by an interstate railroad with the interstate commerce commission and published according to law, has been passed upon and approved by the commission, acting within the scope of its authority, the decision of that tribunal is binding upon the state courts, and the question of the validity of the rule is not open for consideration in an action brought by the railroad company to recover the charges assessed under the rule as to cars engaged in interstate commerce."

In the course of his opinion, page 151, Judge Newman says:

"Under the provisions of the interstate commerce act, it was the positive duty of the carrier to collect the charges provided for in the tariff, and this is the purpose of the present action. The demurrage rule upon which plaintiff relies relates to interstate commerce. It was passed upon by a federal tribunal having full authority to act and was approved. If the power existed in the courts of the states to question its rulings, it would result, most likely, in diverging opinions and conflicting decisions in matters of interstate commerce, and would be destructive of the uniformity of regulation which the interstate commerce act was designed to secure."

I think these principles apply here and are conclusive of this case. There will, therefore, be a finding in favor of the plaintiff for $101.04.